```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

IN RE:

FRANCIS CLIFFORD TUCKER,                     Bankruptcy No. 09-914

    Debtor.
_____

FRANCIS CLIFFORD TUCKER,

    Debtor - Appellant,

v.                                           Civil Action No. 5:11CV38
                                                          (STAMP)
OHIO VALLEY AMUSEMENT COMPANY,
ALLAN HART and
ALEXAS INTERTAIMENT LLC,

    Creditors - Appellees.

## MEMORANDUM OPINION AFFIRMING ORDER AND MEMORANDUM OPINION OF THE BANKRUPTCY COURT

### I.   Procedural History

The appellees, Ohio Valley Amusement Company ("OVA"), Alexas Intertaiment, LLC ("Alexas"), and Al Hart (collectively, the "petitioning creditors"), filed an involuntary Chapter 7 petition against the appellant/debtor, Francis C. Tucker ("Tucker"). Tucker filed an answer contesting the petition and two motions to dismiss. The United States Bankruptcy Court for the Northern District of West Virginia denied the motions to dismiss and held a trial on the contested petition. Based upon the evidence and arguments presented by the parties at trial, the bankruptcy court found that the petitioning creditors established grounds for relief under 11 U.S.C. § 303. Tucker appealed to this Court. Pursuant to the

briefing schedule ordered by this Court, the appellant filed a memorandum of law in support of his appeal. The appellees filed their brief, to which the appellant filed a reply brief. This matter is now ripe for review and pending before this Court.

## II.  Background

From 1980 through 2006, Tucker operated a video lottery business. Tucker organized OVA to hold the necessary licenses, equipment, and real estate leases, and he served as OVA's president and sole shareholder. In February 2003, Tucker authorized OVA's Chapter 11 bankruptcy petition. In 2007, a group of investors doing business as H.E.B., LLC ("HEB") intervened in OVA's bankruptcy proceeding. HEB formed Alexas as a special purpose entity to enable OVA to emerge from bankruptcy. Alexas purchased third-party claims against the OVA bankruptcy estate in order to promote a plan of reorganization. With a substantial infusion of capital by Alexas, the reorganization plan was confirmed on December 14, 2007. When outstanding stock in OVA was cancelled and new stock was issued, Tucker was left with no interest in OVA.

Upon confirmation of OVA's reorganization plan, and in accordance with its terms, Brad Singleton became the Chief Operations Officer and Vice President of OVA. Later, HEB sold its membership interests in Alexas to Singleton, giving him a 49% ownership interest in OVA. Al Hart, a contractor for OVA originally hired by Tucker, continued to work for OVA even after

Tucker lost control of the company. Hart remained on call each night to respond to calls from OVA's customers.

OVA's claim against Tucker arises from a March 27, 2002 promissory note (the "Northern Note") executed by Tucker on behalf of Mound City, Inc. ("MCI") and OVA to Northern Hancock Bank ("Northern"). MCI and OVA both signed as borrowers on the Northern Note, while Tucker signed a personal guaranty for the borrowers' obligations to Northern.

OVA's Chapter 11 plan provided that it would be bound by its guarantee of the debts of MCI owed to Northern, but that Northern would receive no distribution under the plan. After confirmation, Northern filed a complaint in the Circuit Court of Hancock County, West Virginia, seeking a judgment against MCI, OVA, and Tucker for the amount due on the Northern Note. Northern later assigned all of its rights in the Northern Note to OVA. The petition alleges that OVA holds a $258,034.84 claim against Tucker based on his personal guaranty. Additionally, Tucker owes $5,021.11 to OVA based upon an award of sanctions issued by the bankruptcy court for his failure to attend a scheduled deposition.

Alexas acquired its claims against Tucker in conjunction with its acquisition of claims in the OVA bankruptcy case. Tucker's personal obligations on OVA's corporate debts resulted in three judgments against him totaling $1,432,623.23. Hart's claim against Tucker is based upon an oral agreement by which he loaned

$10,000.00 to Tucker to buy stock in Virtual Health Technologies, Inc. ("VHGI").

### III. Jurisdiction and Standard of Review

This Court has jurisdiction over this bankruptcy appeal pursuant to 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8002. This Court reviews the bankruptcy court's conclusions of law under a de novo standard of review and reviews findings of fact by the bankruptcy court for clear error. See Federal Rule of Bankruptcy Procedure 8013; In re NVR, LP, 189 F.3d 442, 448 (4th Cir. 1999); Educ. Credit Mgmt. Corp. v. Kirkland, 600 F.3d 310, 314 (4th Cir. 2010).

### IV. Discussion

In his memorandum of law in support of appeal, Tucker focuses on two arguments previously raised before the bankruptcy court: (1) the petitioning creditors acted in bad faith; and (2) the petition is not valid because it does not include a valid number of petitioning creditors due to the interrelatedness of OVA, Alexas, and Hart. Tucker also presents a new argument: he cannot be held liable for alleged debts incurred by him while acting in his official capacity as president of OVA. Notably, Tucker does not contest the bankruptcy court's conclusion that all three of the petitioning creditors hold qualified claims pursuant to 11 U.S.C. § 303(b). Mem. Op., BK No. 09-914 at 13, Nov. 24, 2010. This Court addresses each of the appellant's arguments in turn.

A.   Petitioning Creditors' Good Faith

In analyzing Tucker's claim that the involuntary petition against him was filed in bad faith, the bankruptcy court utilized the United States Court of Appeals for the Fourth Circuit's test that combines both an objective standard that focuses on whether a reasonable person in the position of the creditor would have filed, and a subjective standard that examines the petitioner's motivation. See In re U.S. Optical, Inc., No. 92-1396, 1993 WL 93931, at *4 (4th Cir. Apr. 1, 1993) ("Most courts . . . apply both a subjective and objective test."). Considering the totality of the circumstances, the bankruptcy court found that Tucker had failed to show that the involuntary petition was filed in bad faith. See id. ("No one single factor will show bad faith. Rather, the totality of the circumstances must be evaluated to determine whether the petition has been filed in bad faith.").

On appeal, Tucker again asserts that the petitioning creditors acted in bad faith because they filed the involuntary petition purely for collection purposes. Tucker relies heavily on Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp., 986 F.2d 709, 716 (4th Cir. 1993), in which the Fourth Circuit affirmed the bankruptcy court's conclusion that the involuntary petition was filed for an improper purpose -- the collection of a debt. In Atlas, the court dismissed the involuntary petition against Atlas Machine & Iron Works, Inc. because the petitioning creditor, Bethlehem Steel Corp., acted in bad faith by filing the petition

5

solely to collect the debt owed to them by Atlas. Id. Citing to the testimony of Al Hart, Brad Singleton, and Tom Tucker, the appellant argues that all of the petitioning creditors conceded that they filed the involuntary petition solely to collect on a debt. Further, Tucker argues that the appellees failed to contact other possible creditors, thus proving that they did not bring the petition for the good of the creditor body, but instead used the petition in a self-serving manner as a debt collection device.

The appellees argue that Tucker's reliance on Atlas is misplaced. According to the appellees, the bankruptcy court in Atlas deemed the petition defective because Bethlehem filed as a single petitioner even though it knew that Atlas had more than twelve creditors. The appellees highlight that in this case, in contrast to Atlas, the involuntary petition was commenced by three creditors, each of which holds a non-contingent, undisputed claim against Tucker, which collectively constitute 97% of all the claims at issue in this case.

The appellant also argues that the bankruptcy court erred in failing to address whether Al Hart acted in bad faith. Tucker claims that "the bankruptcy court's view that the petitioning creditors have brought a good faith involuntary petition simply because they hold a bigger piece of the overall pie in comparison to other potential creditors is simply erroneous." Appellant's Br. at 10. Moreover, Tucker contends that Hart never made a demand for payment and that there are no terms associated with his loan.

The appellees respond by stating that as of the date of the petition, Hart knew that Alexas held a judgment against Tucker in an amount exceeding $2,350,000.00. The appellees claim that Hart was also aware that Tucker had fraudulently transferred his assets in order to block Alexas' efforts to enforce its judgment claim. Based on these facts, the appellees contend that Hart acted in good faith by filing the petition.

As the bankruptcy court correctly noted, "[a] filing is presumed to be in good faith, and the existence of bad faith must be proven by the debtor by a preponderance of the evidence." In re U.S. Optical, Inc., 1993 WL 93931, at *3. This Court agrees that the appellant cannot rely on Atlas to meet this burden. In Atlas, Bethlehem filed as a single petitioner even though Atlas had twelve or more creditors, and the bankruptcy court determined that the administration of the case in bankruptcy would be of no benefit to other creditors who were being paid. Atlas, 986 F.2d at 714. An involuntary petition "must be exercised for the good of the entire creditor body and for legitimate bankruptcy purposes. It is not intended to be used in an exclusively self-serving manner as a collection device." In re Tichy Elec. Co., 332 B.R. 364, 376-77 (Bankr. N.D. Iowa 2005) ("Improperly exercised, a creditor [filing an involuntary petition] can hold a business hostage unless its claim is satisfied."). While a creditor may not file an involuntary petition solely to protect his own interest, he may file an involuntary petition to ensure payment according to the

bankruptcy priority scheme. In re Ex-L Tube, Inc., No. 06-42967-7, 2007 WL 541670, at *3 (Bankr. W. D. Mo. Feb. 16, 2007).

In this case, Tucker admitted to transferring assets out of the reach of his creditors. This conduct rendered state court collection remedies difficult and impractical for his creditors. Considering the objective standard, this Court agrees that Tucker has failed to show how invoking the bankruptcy court's jurisdiction to recover and liquidate property for his bankruptcy estate is not something that a reasonable person in the position of the petitioning creditors would attempt. With regard to the petitioning creditors' subjective motivations, Tucker has not shown that their motives include anything but a desire to recover fraudulent transfers and to initiate a liquidation of Tucker's property. The bankruptcy process can be used to achieve both of these goals. Additionally, Tucker has offered nothing but speculation in support of his argument that OVA and Alexas filed the petition in order to eliminate him as competition.

The fact that the bankruptcy court did not directly address whether Al Hart acted in bad faith does not change this result. Like the other creditors, Hart was aware of Tucker's fraudulent transfers and his debts owed to Alexas. Given this knowledge, a reasonable person in Hart's position would have filed an involuntary petition, motivated by a desire to recover fraudulent transfers and to ensure his repayment priority. Tucker has failed to prove any other motivation on the part of Hart. Thus, this

Court agrees that the involuntary petition was filed in good faith by all of the petitioning creditors.

B.   Number of Petitioning Creditors

Previously, Tucker argued before the bankruptcy court that OVA and Alexas should be counted as a single creditor, which would require the petitioning creditors to prove that Tucker has fewer than twelve creditors under 11 U.S.C. § 303(b)(2).  The bankruptcy court concluded that because Tucker could not pierce the corporate veil, he could not prove that Alexas and OVA should be counted as one entity for purposes of standing to file the involuntary petition.

On appeal, Tucker again emphasizes the interrelatedness of OVA, Alexas, and Hart.  Specifically, he argues that OVA and Alexas "speak though one voice" -- Brad Singleton, the Director of OVA and managing member of Alexas.[1]  According to Tucker, Alexas is not a qualified petitioner because its interest is the same as that of OVA.  Tucker also argues that because Hart is an employee of OVA and listed as an "insider" in the Chapter 11 Reorganization Plan of OVA, he does not qualify as a separate petitioning creditor.

As the appellees note in their brief, the appellant's argument regarding the interrelatedness of the creditors ignores the proper analysis for determining whether they qualify as separate creditors.   The appellees submit that the bankruptcy court

---

[1] Singleton is the sole shareholder of Alexas and Alexas owns 49% of the shares of OVA.

9

correctly found that Tucker bears the burden of proving that the corporate veil of OVA and Alexas should be pierced under state law in order for them to be counted as a single creditor. Pointing to the record, the appellees argue that Tucker has not met this burden because: (1) there is no evidence that any of the petitioning creditors have been operated for a fraudulent purpose; (2) OVA and Alexas have maintained their separate corporate identities; and (3) Hart's business relationship with OVA does not disqualify him as a petitioning creditor.

This Court finds that the bankruptcy court correctly applied West Virginia law on veil piercing in determining that the creditors should not be consolidated. See S. Elec. Supply Co. v. Raleigh County Nat'l Bank, 320 S.E.2d 515, 523 (W. Va. 1984) (setting forth the considerations involved in the decision to pierce the corporate veil).[2] As the bankruptcy court stated, the

---

[2] Decisions to "pierce" involve multifarious considerations, including inadequacy of capital structures, whether personal and corporate funds have been commingled without regard to corporate form by a sole shareholder, whether two corporations have commingled their funds so that their accounts are interchangeable; whether they have failed to follow corporate formalities, siphoning funds from one corporation to another without regard to harm caused either entity, or failed to keep separate records. Other reasons to disregard the structure are: total control and dominance of one corporation by another or a shareholder; existence of a dummy corporation with no business activity or purpose; violation of law or public policy; a unity of interest and ownership that causes one party or entity to be indistinguishable from

factors set forth in S. Elec. Supply Co. must be coupled with "evidence that a corporation attempted to use its corporate structure to perpetrate a fraud or do a grave injustice on an innocent third party seeking to 'pierce the veil.'" Id.

After reviewing the pleadings and the record in this case, this Court agrees that Tucker has done nothing more than show that Alexas and OVA share an officer, Brad Singleton. This connection alone is insufficient proof that the corporate structures were used to perpetrate fraud or do grave injustice. This Court agrees that nothing prohibits Singleton from owning interests in two separate corporations with common purposes. Id. at 788-89. Further, the evidence shows that while Singleton exercises considerable discretion in managing the financial affairs of OVA, Tom Tucker, CEO of OVA, manages the daily business affairs of OVA.

Similarly, Hart's employment with OVA does not disqualify him as a petitioning creditor. Again, the appellant has failed to pierce the corporate veil in order to justify consolidating Hart's claim with OVA's. The fact that Hart is "available on call at all times by OVA" does not mean that OVA has attempted to use its corporate structure to perpetrate a fraud. Appellant's Br. at 12. In this case, the creditors have maintained their separate

---

another; common shareholders, common officers and employees, and common facilities.

S. Elec. Supply Co., 320 S.E.2d at 788.

identities, thus, consolidation should not be permitted. The appellant has failed to prove otherwise.

C.  Tucker's Personal Liability for Debts

As the bankruptcy court's opinion sets forth, an order for relief under 11 U.S.C. § 303 can only be entered if it is determined that the "debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(h)(1). The burden is on the creditors to establish that as of the petition date, the debtor was generally not paying his debts when due. See In re Caucus Distributors, Inc., 83 B.R. 921, 931 (Bankr. E.D. Va. 1988). Applying the five-factor test set forth in In re Knoth, 168 B.R. 311, 316 (Bankr. D. S.C. 1994), the bankruptcy court determined that the creditors have shown by a preponderance of the evidence that Tucker was not paying his debts as those debts fell due.[3]

Tucker, however, argues for the first time on appeal that the bankruptcy court improperly found, in effect, that he could be held personally liable for actions taken by him while acting in his

---

[3]"The 'generally not paying' test is determined as of the date of the filing of the involuntary petition." In re Knoth, 168 B.R. at *317. The five factors used as a starting point are as follows:
    [1] the timeliness of payments on past due obligations;
    [2] the amount of debts long overdue;
    [3] the length of time during which the debtor has been unable to meet large debts;
    [4] any reduction in the debtor's assets; and
    [5] the debtor's deficit situation.
Id.

official capacity as president of OVA. Citing to <u>Boston Beverage Corp. v. Turner</u>, 81 B.R. 738 (D. Mass. 1987), Tucker asserts that the claims brought by OVA and Alexas arise out of his relationships with the petitioning creditors and that his debts accrued while he was serving in his corporate capacity. Therefore, Tucker argues that cannot be held personally liable for these debts. The appellees counter that the bankruptcy court correctly found that Tucker is generally not paying his debts as they become due.

As noted above, the bankruptcy court determined, and the appellant does not dispute, that the petitioning creditors' claims against him are not the subject of a bona fide dispute as to liability or amount.[4] <u>See</u> 11 U.S.C. § 303(b)(1). The claim held by OVA against Tucker is the result of an absolute guaranty of payment by Tucker, and Alexas' claims are the result of judgment liens against Tucker based upon personal obligations on purchase money loans for OVA's equipment. Thus, Tucker's personal liability for these debts has already been established and the only remaining inquiry is whether he is generally not paying these debts. As the bankruptcy court stated, Tucker has never made a payment on the debts owed to the three petitioning creditors, and the majority of this approximately $2.6 million debt has been due for over five years. Moreover, Tucker acknowledged at trial that he was not

---

[4]In the appellant's reply to the brief of the appellees, he states that certain state court actions filed by the appellees are clear evidence that a bona fide dispute still exists between the parties. Appellant's Reply Br. at 3. The appellant, however, presents no other facts in support of this argument.

making payments to any of the other fourteen creditors in his Debtor's Rule 1003(b) Creditor list, ten of which are individuals who made personal loans to Tucker. Although these creditors may not be actively seeking collection, that does not excuse Tucker from a debt that is due. See In re West Side Cmty. Hosp., 112 B.R. 243, 256 (Bankr. N.D. Ill. 1990) ("Mere failure of a creditor to demand payment of a debt does not excuse failure to pay it.").

In addition to the debts not being paid as due to the petitioning creditors and Tucker's family and friends, Tucker also testified to a debt owed to an attorney and another debt owed to an equipment supplier. Tucker acknowledged that these debts were not being paid either. Despite the fact that Tucker has not paid the amounts due to the petitioning creditors and other creditors, his assets have been reduced. Tucker transferred stock to his mother and to Tucker & Tucker Enterprises.[5] Tucker also conveyed real estate to his mother for no consideration. This Court concurs with the bankruptcy court's finding that there is no evidence to suggest that Tucker was fulfilling his financial obligations. Instead, Tucker managed his finances in a manner that was evasive and detrimental to his creditors. This Court finds that the petitioning creditors have shown by a preponderance of evidence that Tucker was not paying his debts as those debts fell due.

---

[5]Tucker & Tucker Enterprises is a business set up by Tucker in which his mother is the sole shareholder.

V. <u>Conclusion</u>

For the reasons set forth above, the bankruptcy court's order and memorandum opinion granting the petitioners relief under Chapter 7 of the Bankruptcy Code is AFFIRMED. It is further ORDERED that this appeal should be and hereby is DISMISSED and STRICKEN from the active docket of this Court.

The Clerk is directed to transmit copies of this memorandum opinion to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is directed to enter judgment on this matter.

DATED: October 31, 2011

<u>/s/ Frederick P. Stamp, Jr.</u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE